**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Carissa Perry,

      Plaintiff,

v.

Merrick Bank Corporation,

      Defendant.

No. CV-25-02297-PHX-DWL

**ORDER**

In March 2024, Carissa Perry ("Plaintiff") initiated an arbitration proceeding against Merrick Bank Corporation ("Defendant"), asserting claims under the Fair Credit Reporting Act ("FCRA"), the Fair Debt Collection Practices Act ("FDCPA"), and other state and federal statutes.

In November 2024, the arbitrator issued a final award in favor of Defendant, concluding that all of Plaintiff's claims lacked merit, that Defendant was entitled to recover $774.43 on a counterclaim, and that Defendant was also entitled to recover over $58,000 in attorneys' fees and costs. Afterward, Defendant initiated an action in Maricopa County Superior Court to confirm the arbitration award. In March 2025, that court entered judgment in Defendant's favor. Since then, Plaintiff has attempted to mount various attacks on the state-court judgment, but they have all been unsuccessful.

Meanwhile, in July 2025, Plaintiff (who is proceeding *pro se*) initiated this action by filing a sprawling 165-page complaint. Plaintiff again raises FCRA, FDCPA, and other state and federal claims against Defendant arising from the same dispute that formed the

basis for the arbitration.

Now pending before the Court is Defendant's motion to dismiss.  (Doc. 17.)  The motion is fully briefed (Docs. 20, 22) and neither side requested oral argument.  For the reasons that follow, the motion is granted.

**RELEVANT BACKGROUND**

I.      The Arbitration

In March 2024, Plaintiff initiated an arbitration proceeding against Defendant. (Doc. 17-2 at 10-17.)  Among other things, Plaintiff alleged that Defendant "violated [her] consumer rights which is also violation of the federal law.  Company violated FCRA/FDCPA & refuse to delete an inaccurate account/tradeline off [her] credit report." (*Id*.)  In an arbitration brief filed in June 2024, Plaintiff elaborated:

> This arbitration claim arises from a series of actions and omissions by Merrick Bank Corporation, that have significantly harmed me.  I seek redress for violations of various state and federal laws governing debt collection practices, consumer protection and credit reporting.   Merrick Bank Corporation engaged in fraudulent, abusive and harassing conduct, failed to maintain accurate records, misrepresented debt information, Unfair and predatory practices, and used deceptive practices.  All of which have caused me substantial harm including financial loss, damage to creditworthiness, emotional distress, and reputational harm as a direct result of the respondents unlawful practices.  I'am [sic] holding this banking Institution accountable and legally liable under the federal law, Arizona state debt collect laws and statutes/codes.

(*Id.* at 28, 37.)

In November 2024, the arbitrator issued a final award.  (*Id.* at 50-55.)  The arbitrator concluded as follows:

> Claimant asserts that the Respondent violated the Fair Credit Reporting Act, the Fair Debt Collection Practices Act, the Fair Debt Collection Practices Act and Utah state laws, and she seeks damages from these violations.  Based on the evidence presented, the Claimant has failed to meet her burden of proof establishing violations of the federal laws and state laws that she relies on to support her claim.  The record supports a finding that there was a credit card agreement between Claimant and Respondent, which is the basis for Respondent's counterclaim.  The record also establishes that Claimant failed to take timely substantial steps to challenge the debt that is the basis of

> Respondent's counterclaim.  This failure to meet the requirements of the contract and applicable requirements of federal law supports a finding that Respondent is awarded $774.43 and Claimant's claim is denied.

(*Id.* at 50.)  The arbitrator also noted that, during an earlier stage of the proceeding, Plaintiff "expressed that she intended to make this matter difficult for Respondent.  This intent seemed to be the basis for Claimant's numerous filings unsupported by cases and laws, in addition to exhibits that were not relevant to her legal obligations under the contract, but all were intended by Claimant to boost her claim. Claimant's actions resulted in Respondent incurring extraordinary time and expense." (*Id.* at 55.)  Although the arbitrator concluded that Plaintiff's "actions fall short of a frivolous claim under R-44 of the Consumer Rules," the arbitrator still ordered Plaintiff "to pay Respondent's attorney's fees and costs.  Claimant shall pay Respondent's attorneys fee in the amount of $58,165.50 within 180 days of the date of this Award."  (*Id.*)

II.    The State Court Action

On March 7, 2025, Defendant initiated an action in Maricopa County Superior Court to confirm the arbitration award.  (*Id.* at 2-5.)  The action is captioned *Merrick Bank v. Carissa Perry* and is assigned case number CV 2025-008562 (hereinafter, "the State Court Action").

On March 24, 2025, the court granted the confirmation application in full.  (Doc. 17-1 at 2-3.)  The version of the judgment entered in March 2025 reads: "Judgment is entered in favor of Plaintiff Merrick Bank and against [Carissa Perry] for $58,939.93.  No further matters remain pending and final judgment is entered against [Carissa Perry]." (*Id.* at 2.)

Three days later, on March 27, 2025, Plaintiff moved to strike the judgment and dismiss or stay the proceedings.  (Doc. 17-3.)  Defendant, in turn, moved for an extension of the service deadline and/or for an order deeming Plaintiff to have been served based on her actual notice of and engagement with the matter.  (Doc. 17-7.)  The superior court granted Defendant's motion, deeming Plaintiff to have been served (Doc. 17-8), and denied Plaintiff's motion (Doc. 17-9).

On July 2, 2025—the same day Plaintiff initiated this action—Plaintiff filed a motion to stay the proceedings in the State Court Action. *See* https://courtminutes.clerkofcourt.maricopa.gov/viewerME.asp?fn=Civil/082025/m11466688.pdf.

On August 26, 2025, the superior court granted the stay request, "staying [the State Court Action] until February 2, 2026." (*Id.*)

On February 24, 2026, Plaintiff filed a "Motion to Vacate Judgment as Void." *See* https://courtminutes.clerkofcourt.maricopa.gov/viewerME.asp?fn=Civil/032026/m11689002.pdf.

On March 4, 2026, the superior court struck that motion as improperly filed. (*Id.*)

On April 17, 2026, during a status conference, Defendant "request[ed] to amend the judgment to include the specific language to make it an appealable order." *See* https://courtminutes.clerkofcourt.maricopa.gov/viewerME.asp?fn=Civil/042026/m11749820.pdf.

On April 24, 2026, Defendant lodged an amended form of judgment. See https://www.superiorcourt.maricopa.gov/docket/CivilCourtCases/caseInfo.asp?caseNumber=CV2025-008562.

On May 4, 2026, Plaintiff filed an objection to Defendant's proposed amended form of judgment and a "Renewed Request for Relief under Rule 60(b)(4)." *See* https://courtminutes.clerkofcourt.maricopa.gov/viewerME.asp?fn=Civil/052026/m11793986.pdf.

On May 27, 2026, the superior court denied Plaintiff's objection and request. (*Id.*)

That same day, the superior court entered the amended form of judgment. *See* https://www.superiorcourt.maricopa.gov/docket/CivilCourtCases/caseInfo.asp?caseNumber=CV2025-008562. The amended form of judgment—which is enclosed as Exhibit A to this order—adds various references to Rule 54(c) of the Arizona Rules of Civil Procedure, such that it now concludes: "No further matters remain pending and final judgment is entered, under Rule 54(c), against [Carissa Perry] and in favor of Merrick Bank."

III.   This Action

On July 2, 2025, Plaintiff initiated this action. (Doc. 1.) The 165-page complaint asserts claims against Defendant under the FCRA, the FDCPA, and other state and federal statutes. (*Id.* at 1.) Although the complaint is not, to put it charitably, a model of clarity, it describes a series of disputes that Plaintiff raised between September 2022 and 2024 concerning alleged inaccuracies in Defendant's reporting of a particular tradeline. (*Id.* at 20.)

On February 10, 2026, Defendant filed the pending motion to dismiss. (Doc. 17.)

On February 24, 2026, Plaintiff filed a response. (Doc. 20.)

On March 5, 2026, Defendant filed a reply. (Doc. 22.)

**DISCUSSION**

Defendant's primary argument is that "Plaintiff's Complaint should be dismissed in its entirety" because all of Plaintiff's claims "are barred by the issue and claim preclusion doctrines." (Doc. 17 at 1, 5.)[1] As for claim preclusion, Defendant argues that "[t]he central criterion in determining whether there is an identity of claims between the first and second adjudications is 'whether the two suits arise out of the same transactional nucleus of facts'" and contends that this standard is satisfied here in part because "each of the claims in the current lawsuit that were not brought in the arbitration proceeding *could have* been brought in the arbitration proceeding." (*Id.* at 5-6.) As for issue preclusion, Defendant argues that "the arbitration squarely addressed—and necessarily resolved—the same factual and legal issues Plaintiff now seeks to relitigate. In particular, the Arbitrator determined [Defendant] acted properly when investigating Plaintiff's dispute and reporting information related to the Account. These issues were not incidental or tangential; they were central to Plaintiff's claims and essential to the Arbitrator's final decision. . . .   Because those same determinations form the factual and legal foundation of Plaintiff's claims in this action, they may not be relitigated here." (*Id.* at 6-7.)

---

[1]   Defendant also argues that the complaint is deficient under Rule 8 (Doc. 17 at 7), but the Court need not resolve that argument in light of its determination that the complaint is subject to dismissal under the issue preclusion doctrine.

"In determining the preclusive effect of a state-court judgment, [courts] must refer to the preclusion law of the State in which judgment was rendered." *Diruzza v. Cnty. of Tehama*, 323 F.3d 1147, 1152 (9th Cir. 2003) (cleaned up).  In light of this principle, it is unclear whether the doctrine of claim preclusion would support dismissal of the complaint in its entirety at this stage of the case.  "Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997).  Under Arizona law, claim preclusion requires "(1) an identity of claims in the suit in which a judgment was entered and the current litigation, (2) a final judgment on the merits in the previous litigation, and (3) identity or privity between parties in the two suits." *Lawrence T. v. Dep't of Child Safety*, 438 P.3d 259, 262 (Ariz. Ct. App. 2019) (cleaned up).

As for the identity-of-claims element, Defendant cites a case analyzing the res judicata effect of an earlier *federal* judgment in support of the notion that "[t]he central criterion in determining whether there is an identity of claims between the first and second adjudications is 'whether the two suits arise out of the same transactional nucleus of facts.'" (Doc. 17 at 5, citing *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000)).  But as noted, the Court must apply *Arizona's* identity-of-claims test here, and "Arizona courts apply the 'same evidence' test" to evaluate the first element of the claim preclusion test. *Lawrence T.*, 438 P.3d at 264.  *See also Huffman v. Magic Ranch Ests. Homeowners Ass'n*, 2023 WL 3000820, *3 (Ariz. Ct. App. 2023) (unpub.) (acknowledging that the Arizona Supreme Court continues to use the same-evidence test rather than the transactional approach).  Under this approach, "[f]or an action to be barred, it must be based on the same cause of action asserted in the prior proceeding.  Arizona has applied a rather restrictive test to resolve this question: If no additional evidence is needed to prevail in the second action than that needed in the first, then the second action is barred." *Phoenix Newspapers, Inc. v. Dep't of Corr., State of Ariz.*, 934 P.2d 801, 804 (Ariz. Ct. App. 1997) (citations omitted).  "Two causes of action which arise out of the same transaction or occurrence are not the same for purposes of res judicata if proof of different or additional facts will be

required to establish them." *E.C. Garcia and Co., Inc. v. Ariz. Dep't of Revenue*, 875 P.2d 169, 179 (Ariz. Ct. App. 1993). "The 'same evidence' test is quite liberal, and permits a plaintiff to avoid preclusion 'merely by posturing the same claim as a new legal theory,' even if both theories rely on the same underlying occurrence." *Power Rd.-Williams Field LLC v. Gilbert*, 14 F. Supp. 3d 1304, 1309 (D. Ariz. 2014) (citation omitted). Defendant has not attempted—likely due to its mistaken belief that the transactional approach applies here—to show that each of the claims asserted in Plaintiff's 165-page complaint is barred under the same-evidence test.

With that said, Defendant's arguments regarding issue preclusion do not require the same mode of analysis. In Arizona, "[c]ollateral estoppel, or issue preclusion, binds a party to a decision on an issue litigated in a previous lawsuit if the following factors are satisfied: (1) the issue was actually litigated in the previous proceeding, (2) the parties had a full and fair opportunity and motive to litigate the issue, (3) a valid and final decision on the merits was entered, (4) resolution of the issue was essential to the decision, and (5) there is common identity of the parties." *Campbell v. SZL Properties, Ltd.*, 62 P.3d 966, 968 (Ariz. Ct. App. 2003).

The first, second, fourth, and fifth elements are all satisfied here. The disputed issues in the arbitration—in which there was a common identity of parties—included (1) whether Plaintiff was the person who incurred the disputed charges on her credit card account with Defendant; (2) whether Defendant acted properly when investigating Plaintiff's dispute; (3) whether Defendant acted properly when reporting information to credit reporting agencies ("CRAs") related to the dispute; and (4) whether Defendant engaged in improper debt-collection activities. (*See generally* Doc. 17-2.) The arbitrator resolved each of those issues, which were essential to the decision, in Defendant's favor after a full and fair proceeding in which Plaintiff had the opportunity and motive to litigate the issues. More specifically, as for the first issue, the arbitrator concluded: "The lack of information supporting evidence of the alleged fraud, including when, where, or how, fails to support a finding that the debt associated with [Plaintiff's] contract occurred as the result

of theft or loss.  The record supports a finding that [Plaintiff's] accumulation of debt on the credit card account was due to purchases under the contract provisions along with interest charges and late fees assessed when she failed to pay the amount due under the terms of the contract."  (*Id.* at 52.)  As for the second and third issues, the arbitrator concluded: "[Plaintiff] provides incomplete or no information in support of her claim of an inadequate investigation conducted by [Defendant] when [Plaintiff] disputed the contract.  [Plaintiff's] delay in raising a dispute under the contract, along with the lack of information describing what she disputes, fails to support [Plaintiff's] assertion of an inadequate investigation by [Defendant].  [Defendant] acting as furnisher met its obligation under the FCRA, and the record clearly supports a finding that [Defendant] conducted a reasonable investigation in responding to each of the consumer reporting agencies when contacted about [Plaintiff's] status as a debtor with an account with [Defendant]."  (*Id.* at 53.)  And as for the fourth issue, the arbitrator concluded: "[Plaintiff] asserts that the collections steps undertaken by [Defendant] to seek payment of the past due debt amounted to violations of the FDCPA due to the number of contacts and the methods used to contact her.  [Plaintiff's] assertions are without merit because the FDCPA provisions that limit how a FDCPA creditor may contact a debtor regarding the debt do not apply to [Defendant]."  (*Id.* at 54.)

Turning to the third element, "Arizona procedural rules define when a judgment is final.  Under Arizona Rule of Civil Procedure 54(c), a 'judgment as to all claims and parties is not final unless the judgment recites that no further matters remain pending and that the judgment is entered under Rule 54(c).'  Arizona courts take a strict approach to Rule 54(c)'s requirements." *Martinez v. City of Phoenix*, 2026 WL 1470010, *1 (9th Cir. 2026).  Here, although the original version of the judgment entered in March 2025 was insufficient because it lacked an express reference to Rule 54(c), the amended judgment entered in May 2026 remedies this omission—as noted, it now provides that "[n]o further matters remain pending and final judgment is entered, under Rule 54(c), against [Carissa Perry] and in favor of Merrick Bank."  This is sufficient to achieve finality.

Notwithstanding all of this, Plaintiff first argues that "preclusion cannot be resolved

at the pleading stage" because it is an affirmative defense. (Doc. 20 at 4.) This is incorrect. *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) ("The defendants raised *res judicata* in their motion to dismiss under Rule 12(b)(6), rather than in a responsive pleading. Ordinarily affirmative defenses may not be raised by motion to dismiss, but this is not true when, as here, the defense raises no disputed issues of fact. In the circumstances of this case it is appropriate to affirm the district court's order of dismissal of Count One as *res judicata . . . .*").

Plaintiff next argues that "issue preclusion is not established" because "Defendant identifies no specific statutory element adjudicated and necessarily decided that bars claims here." (Doc. 20 at 5-6.) This argument lacks merit. The complaint asserts 11 federal claims: (1) a claim under the FCRA for "failure to conduct reasonable reinvestigation after notice from CRA" (Doc. 1 at 69-73); (2) a claim under the FDCPA premised on Defendant's "materially false" submissions to credit reporting agencies regarding the disputed tradeline and other "derogatory reporting" (*id.* at 73-77); (3) a claim under the FCRA for failing to conduct a reasonable investigation, failing to report accurate results, and failing to delete inaccurate information (*id.* at 77-81); (4) a claim under the FCRA for "willful and negligent failure to block fraudulent tradeline after receipt of identity theft report" (*id.* at 82-85); (5) a claim under the FDCPA premised on Defendant's attempts to "collect on a defaulted, disputed, and identity-theft-afflicted tradeline" (*id.* at 85-89); (6) a claim under the FCRA for "failure to maintain reasonable procedures to assure maximum possible accuracy" (*id.* at 89-91); (7) a claim under the FCRA for "willful and negligent noncompliance" (*id.* at 91-95); (8) a claim under the FDCPA for "using false, deceptive, or misleading representations in connection with the collection of a debt that was disputed, unverified, and—based on documentary evidence—fraudulent in origin" (*id.* at 95-99); (9) a claim under the FCRA for improperly "obtain[ing] and disseminat[ing] [Plaintiff's] consumer information" after Plaintiff established she was a victim of identity theft (Doc. 1 at 99, Doc. 1-1 at 1-3); (10) a claim for "violation of procedural due process" under the Fifth and Fourteenth Amendments (Doc. 1-1 at 44-48); and (11) a claim for violation of

the Federal Trade Commission Credit Practices Rule that is premised on Defendant "continuing to furnish derogatory information to consumer reporting agencies after being placed on notice . . . that the account was: a) factually inaccurate, b) disputed, c) and no longer enforceable" and "fail[ing] to implement reasonable procedures to ensure the accuracy and legal compliance of information it furnished to CRAs" (*id.* at 55-57). Each of those federal claims—with the possible exception of the "procedural due process" claim—would necessarily require Plaintiff to establish at least one of the four issues, discussed above, that was resolved in Defendant's favor during the arbitration. Plaintiff makes no effort to show otherwise. And the "procedural due process" claim is independently subject to dismissal because it is invalid on its face. *See, e.g.*, *Sanai v. Cobrae*, 2022 WL 17542106, *3 n.2 (E.D. Cal. 2022) ("It is axiomatic that . . . only state action is subject to scrutiny under the Due Process Clause. Here, the complaint neither alleges state action nor invokes a statutory vehicle through which to bring a constitutional due process claim.") (cleaned up). *See also Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 637-38 (9th Cir. 1988) (noting that a "trial court may act on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state a claim" where "the plaintiffs cannot possibly win relief") (cleaned up).[2]

Plaintiff's next argument is that "Defendant's reliance on extrinsic materials is improper" because the materials on which Defendant relies to establish issue preclusion "were not referenced in the Complaint and are not central to the federal statutory claims asserted here." (Doc. 20 at 6.) This argument is unavailing. The materials on which the Court has relied when evaluating issue preclusion are from the State Court Action and from the parties' underlying arbitration proceeding, which the State Court Action affirmed. Plaintiff does not dispute the authenticity of any of those materials. All of those materials are thus properly subject to judicial notice. *See, e.g.*, *United States ex rel. Robinson*

---

[2]    As for the remaining state-law claims in the complaint (Doc. 1-1 at 3-44, 48-54, 57-61), it is unnecessary to decide whether they are barred by issue preclusion because the Court declines to exercise supplemental jurisdiction over them in light of the dismissal of all of Plaintiff's federal claims.

*Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("Generally, we will not consider facts outside the record developed before the district court. However, we may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue. The proceedings before the California Superior Court are directly related to this appeal and may in fact be dispositive. Accordingly, we take notice of that court's final judgment, and related filings. . . . The state court judgment confirmed the AAA award in all respects. Thus, the findings and conclusions of the arbitrator have the same force and effect as a decision reached by the court itself at the close of a fully litigated civil action.") (cleaned up); *EXA-USA, Corp. v. Farnese Terra, Inc.*, 2023 WL 2772515, *3 (N.D. Cal. 2023) ("Courts have also taken judicial notice of arbitration awards."). And because those materials are subject to judicial notice, they may be considered here without converting Defendant's motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Plaintiff's next argument is that no "final and valid judgment entitled to preclusive effect" exists because, at the time she filed her response to the motion to dismiss, she had also filed a pending Rule 60(b)(4) motion in the State Court Action. (Doc. 20 at 5.) As an initial matter, this argument ignores that "[a] judgment otherwise final for purposes of the law of res judicata is not deprived of such finality by the fact that time still permits commencement of proceedings in the trial court to set aside the judgment and grant a new trial or the like; nor does the fact that a party has made such a motion render the judgment nonfinal." Restatement (Second) of Judgments § 13, cmt. f (1982) (cited with approval in *Tumacacori Mission Land Dev., Ltd. v. Union Pacific R. Co.*, 297 P.3d 923, 925 n.5 (Ariz. Ct. App. 2013)). At any rate, as discussed in the Relevant Background section, the superior court in the State Court Action has since denied Plaintiff's Rule 60(b)(4) motion and entered an amended judgment that contains the necessary finality language under Arizona Rule of Civil Procedure 54(c).[3]

---

[3] The Court further notes that the amended judgment would remain final, for issue preclusion purposes, even if Plaintiff subsequently filed a notice of appeal in the State

Finally, Plaintiff argues in conclusory fashion in the final sentence of her response brief that "if the Court identifies any pleading deficiency, Plaintiff requests leave to amend under Rule 15(a)." (Doc. 20 at 8.)  The rule in the Ninth Circuit is that "[a] district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (cleaned up).  "[B]efore dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992), *as amended* (May 22, 1992).  This is one of those rare instances in which leave to amend should be denied in spite of Plaintiff's status as a *pro se* litigant.  It is absolutely clear to the Court that the deficiencies in the complaint could not be cured by amendment.  During the arbitration proceeding, Plaintiff "expressed that she intended to make this matter difficult for" Defendant and "[t]his intent seemed to be the basis for [Plaintiff's] numerous filings unsupported by cases and laws, in addition to exhibits that were not relevant to her legal obligations . . . ." (Doc. 17-2 at 55.)  This action has represented more of the same—Plaintiff filed a sprawling complaint against Defendant on the heels of her loss in the arbitration and has never made any serious effort to explain how the claims in her 165-page complaint differ from the claims she unsuccessfully pursued in the arbitration.  Nor is this the only recent lawsuit in which Plaintiff has engaged in similar tactics.  *Perry v. Exeter Finance LLC*, 2026 WL 538300, *1, *5 n.5, *8 (D. Ariz. 2026) (granting defendant's motion to compel arbitration, in response to Plaintiff's "90-page complaint [that] assert[ed] 18 causes of action under federal and state law," and noting that Plaintiff's filings included at least one "hallucinated citation" as well as "fake quotations" misattributed to real cases).

…

…

…

---

Court Action.  Restatement (Second) of Judgments § 13, cmt. f (1982) ("The better view is that a judgment otherwise final remains so despite the taking of an appeal . . . .").

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss (Doc. 17) is **granted**.  The Clerk shall enter judgment accordingly and terminate this action.

Dated this 9th day of June, 2026.

Dominic W. Lanza
United States District Judge

**EXHIBIT A**

CLERK OF THE SUPERIOR COURT
FILED
MAY 27 2026    1:45 p.m.
C. Lockhart, Deputy

ARIZONA SUPERIOR COURT

MARICOPA COUNTY

MERRICK BANK,

        Plaintiff,

vs.

CARISSA PERRY,

        Defendant.

CASE NO.: CV2025-008562

**AMENDED FORM OF JUDGMENT**

(Assigned to the Honorable Christopher Whitten)

This matter came before the Court on March 7, 2025, on Plaintiff Merrick Bank's ("Plaintiff") Application to Confirm Arbitration Award.

WHEREAS, on March 24, 2025, the Court issued an order confirming the arbitration award, and

WHEREAS, on that same date, the Court entered Judgment in favor of Plaintiff and against Defendant Carissa Perry ("Defendant") in the amount of $58,939.93, and

WHEREAS, no further matters are pending before the court, pursuant to Rule 54(c),

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. The November 22, 2024 Final Award in favor of Plaintiff against Defendant in the total amount of Fifty Eight Thousand Nine Hundred Thirty Nine Dollars and Ninety Three Cents ($58,939.93) is **CONFIRMED**;

2. The Judgment previously entered in favor of Plaintiff Merrick Bank and against Defendant for $58,939.93 is hereby confirmed; and

3. Post-judgment interest on this amount shall accrue at the legal rate from and after March 24, 2025 until the Judgment is paid in full; and

4. No further matters remain pending and final judgment is entered, under Rule 54(c), against Defendant and in favor of Merrick Bank.

Dated this 2nd day of ___May___, 2026.

_____
Judge Christopher Whitten
Maricopa County Superior Court

2